IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JAMEL MONROE,

        Plaintiff,

                              Civ. Action No.
                              9:06-CV-0144 (LEK/DEP)

  vs.

DAWN MULLEN,

        Defendant.

_____

APPEARANCES:                       OF COUNSEL:

FOR PLAINTIFF:

JAMEL MONROE, *Pro Se*

FOR DEFENDANTS:

HON. ANDREW M. CUOMO          STEVEN SCHWARTZ, ESQ.
Office of Attorney General            Ass't Attorney General
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

    Plaintiff Jamel Monroe, a former New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 against a former employee of the New York

State Department of Correctional Services ("DOCS") assigned at the relevant times to work at the prison facility in which the plaintiff was housed, alleging deprivation of his civil rights. In his complaint, Monroe alleges that the defendant was deliberately indifferent to his safety, causing him to fall out of a prison van while conducting a work assignment, and seeks to recover damages to compensate him for the back injury suffered as a result of the accident.

Currently pending before the court is a motion by the plaintiff requesting the entry of summary judgment in his favor. Because the record now before the court, construed in a light most favorable to the defendant, as the nonmoving party, discloses the existence of genuine issues of material fact which must be resolved before the merits of his claim can be adjudicated, I recommend that plaintiff's motion be denied.

I.   BACKGROUND

Plaintiff is a former New York State prison inmate who, for a time, was entrusted to the custody of the DOCS. Amended Complaint (Dkt. No. 7) ¶ 3. During the period relevant to his claims, plaintiff was incarcerated within the Mid-State Correctional Facility ("Mid-State"), located in Marcy, New York, and was assigned as a laundry worker at that facility. *Id*.

Plaintiff claims that on July 21, 2003, while he and five other inmates were riding in a prison van driven by defendant Dawn Mullen, a Stores Clerk formerly employed by the DOCS and assigned to work at Mid-State, he fell out of the vehicle.[1]  Amended Complaint (Dkt. No. 7), Facts ¶ 1; Mullen Decl. (Dkt. No. 23) ¶ 5.  Plaintiff attributes the accident to having been forced to ride in a van with inadequate seating capacity and non-working rear door latches.  Amended Complaint (Dkt. No. 7), Facts ¶¶ 2-3; Monroe Decl. (Dkt. No. 17-3) ¶ 9.  At the time of the incident the van was engaged in a laundry run for the purpose of picking up dirty mop heads and buffer pads from various buildings within the facility and transporting them to the prison laundry for cleaning.  Mullen Dec. (Dkt. No. 23) ¶ 5.

Defendant Mullen was driving the laundry run van on the date of plaintiff's accident as a substitute for the facility Laundry Supervisor, Carlton Mims, who was on vacation.  Mullen Decl. (Dkt. No. 23) ¶ 4; Mims

---

[1] The parties differ as to the number of passengers in the van at the time of the accident.  While plaintiff has expressed his belief, based in part upon his review of prison records, that there were six inmates riding in the van when the accident occurred, *see* Monroe Decl. (Dkt. No. 17-3) ¶ 8, defendant Mullen places the number of inmates being transported at the time at five, noting that "[o]ne of the six inmate laundry workers did not participate in the laundry run that day."  Mullen Decl. (Dkt. No. 23) ¶ 20.  Significantly, nowhere in plaintiff's submissions does he contend that the number of passengers in the van on the day in question exceeded the norm, nor does he claim to have registered any complaints regarding the safety risk presented prior to that date.

Decl. (Dkt. No. 23) ¶ 2. Prior to that date, defendant Mullen was trained by Mims regarding the performance of laundry runs, and followed his instructions when completing the route on that occasion. Mullen Decl. (Dkt. No. 23) ¶ 4; Mims Decl. (Dkt. No. 23) ¶ 2.

According to the plaintiff, shortly before the accident he requested permission to return on foot to the laundry in light of the unavailability of adequate seating in the van. Monroe Decl. (Dkt. No. 17-3) ¶ 9. This assertion is sharply contested by the defendant, who states that no such request was made and that had it been, she would have permitted Monroe to walk back to the laundry area provided he remained in her line of sight. Mullen Decl. (Dkt. No. 23) ¶¶ 7, 8.

In a report completed following the accident, defendant Mullen noted that "[d]ue to the age & the condition of the van, the doors do not latch." *See* Amended Complaint (Dkt. No. 7) Exh. 1. Defendant has denied any knowledge of inoperability of the latch prior to the accident. Plaintiff's Brief (Dkt. No. 17) Exh. B, Defendant's Response to Request for Admissions No. 10. In her response to plaintiff's motion, defendant Mullen makes the following observations regarding the latching capacity of the van's rear doors:

4

> When the van was not being used, the rear doors
> were padlocked shut to secure it, as the latch on
> the doors no longer performed this function.
> However, on laundry runs, during which we
> stopped at several buildings, the padlock was not
> used. Rather, the latch on the doors, in
> conjunction with a bar on the inside of the doors,
> (which was in a vertical position, and which the
> inmates pushed down on to put in the horizontal
> position), secured the doors, and had always
> proved sufficient to keep the doors closed.
> Inmates were instructed to secure the bar after
> entering the van, and it was standard procedure for
> them to do so, after each pick up at each building,
> during every laundry run.

Mullen Decl. (Dkt. No. 23) ¶ 16.

Plaintiff claims to have suffered back injuries as a result of the fall. Amended Complaint (Dkt. No. 7) ¶ 3. Following the incident, Monroe was treated for his injuries by medical staff personnel at Mid-State, and was provided with a neck brace, back brace, and cane, and administered Motrin, Flexoral, and Ibuprofen. *Id.* ¶¶ 4-5. X-rays were taken of plaintiff's spine injuries, disclosing no abnormality. Schwartz Aff. (Dkt. No. 21) Exh. 2. Dr. Ramineni, a DOCS prison physician at Mid-State, examined the plaintiff on July 30, 2003, but found no objective indication of injury, expressing his opinion that plaintiff "exaggerated the pain even on minimal pressure" and describing him as "malingering." *Id.*

5

II.     PROCEDURAL HISTORY

Plaintiff commenced this action on February 2, 2006, and thereafter filed an amended complaint on April 11, 2006. Dkt. No. 7. Named as the only defendant in plaintiff's complaint is Dawn Mullen, a former DOCS employee assigned to work at Mid-State. *Id.* Issue was subsequently joined by the filing of an answer on behalf of defendant Mullen on August 3, 2006. Dkt. No. 14.

On January 4, 2007, prior to the deadline for completion of pretrial discovery, plaintiff moved seeking entry of summary judgment in his favor on the issue of both liability and damages. Dkt. No. 17. In support of his motion, plaintiff asserts that defendant's callous disregard for his safety is firmly established by the record without contradiction, thereby entitling him to a finding as a matter of law that his Eighth and Fourteenth Amendment rights have been violated. *Id.* Defendant has since submitted papers, filed on March 6, 2007, in opposition to plaintiff's motion, asserting the existence of genuine triable issues of material fact which preclude the entry of summary judgment. Dkt. Nos. 21, 23.

Plaintiff's motion, which is now ripe for a determination, has been referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* also Fed.R.Civ.P. 72(b).

III.  DISCUSSION

    A.  Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material", for purposes of this inquiry, if "it might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

    B.    <u>The Substance of Plaintiff's Claims</u>

Plaintiff's complaint, though couched in non-specific terms, appears to assert a claim of cruel and unusual punishment, thereby implicating the Eighth and Fourteenth Amendments to the United States Constitution. Implicit in his motion for summary judgment is plaintiff's contention that on the record now before the court, no reasonable factfinder could conclude that he was not exposed to conditions rising to a level of constitutional significance.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards

9

of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference." *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also*, *generally*, *Wilson*, 501 U.S. 294, 111 S. Ct. 2321. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate

health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

Unquestionably, exposure of a prison inmate to conditions posing a substantial risk of harm can constitute cruel and unusual punishment, in violation of the Eighth Amendment's prohibitions. *See, e.g., Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (allegation that plaintiff was ordered to continue his painting assignment after complaining that the ladder on which he was located was unsafe could extend beyond the mere allegation of lack of ordinary due care and suffice to "state a colorable claim under the Eighth and Fourteenth Amendments") (citations omitted); *Gomez v. Warden of the Otisville Corr. Facility*, No. 99 Civ. 9954, 2000 WL1480478, at *5 (S.D.N.Y. Sept. 29, 2000) (allegations of slippery, waxed floor causing injury to the plaintiff "arguably posed a substantial risk of harm sufficient to satisfy the objective component [of the Eighth Amendment cruel and unusual punishment test]") (citations omitted); *Baumann v. Walsh*, 36 F. Supp. 2d 508, 513-14 (N.D.N.Y. 1999) (Scullin,

11

J.) (allegations that plaintiff was required to climb among shelves and stand on boxes to retrieve materials from a storage room, if true, could demonstrate the existence of an inherently unsafe and dangerous condition). Mere negligence alone, however, will not suffice; instead, to succeed in establishing a constitutional deprivation in a setting such as that now presented the plaintiff must prove additional facts "such as a history of accidents or a previous request for repairs that had fallen on deaf ears." *See Jones v. Morris,* 777 F.2d 1277, 1280 n.5 (7th Cir. 1985).

Inherent in the Eighth Amendment calculus, as it applies to plaintiff's claims, are issues of fact centered upon both the objective and subjective elements of the prevailing test. Addressing the objective element, the record discloses the existence of a disputed issue as to whether the conditions to which plaintiff was exposed were sufficiently serious, in that they presented a substantial risk of serious harm, to be of constitutional concern. While there is evidence to suggest that the rear door latch of the van utilized on the day of the accident was not functioning properly, in her declaration defendant Mullen describes the means by which the doors were typically secured. Mullen Decl. (Dkt. No. 23) ¶ 16. It should be noted, parenthetically, that the van being utilized on July 21, 2003 appears

to have been the same one regularly driven by Laundry Supervisor Mims, when making the prison laundry run, during which he typically transported six inmates at a time with no reported incidents or safety concerns apparent from the record now before the court.  Mims Decl.  (Dkt. No. 23) ¶ 3.

Issues of fact also surround the subjective prong of the prevailing Eighth Amendment test, requiring analysis of whether the defendant was both aware of and disregarded an excessive risk to plaintiff's health or safety.  The record reveals that the defendant was acting as a substitute for Laundry Supervisor Mims on the day in question and, having been trained by him, followed his instructions and engaged in the same practices utilized by Mims during the course of performing his duties. Mims Decl. (Dkt. No. 23) ¶ 2; Mullen Decl. (Dkt. No. 23) ¶ 4.  Defendant contends that at the time of the incident she was driving within the Mid-State complex and traveling between three and five miles per hour – assertions which the plaintiff has not controverted.  Mullen Decl. (Dkt. No. 23) ¶ 12.  While it is true that prison officials have now apparently determined that the proper maximum seating capacity of the van in question is four adults, and has altered its policy specifically to restrict the

13

allowable maximum number of passengers, those changes were implemented after, and only as a result of, plaintiff's allegations, and there is no indication that defendant knew or reasonably should have known of the appropriateness of these limitations prior to the incident.

In sum, the record reveals the existence of genuinely controverted issues surrounding both the subjective and objective elements of the controlling Eighth Amendment test.   Absent resolution of these critical fact issues, the court is not positioned to make a determination regarding liability on plaintiff's constitutional claim.[2]

IV.   <u>SUMMARY AND RECOMMENDATION</u>

The record now before the court reveals the existence of genuine issues of material fact arising from the governing standard to be applied to plaintiff's constitutional claims.  Because the entry of summary judgment would be inappropriate, given those triable issues of fact, I therefore

---

[2]   While the plaintiff has sought the entry of summary judgment in connection with both liability and damages, the question of what, if any, damages he should recover in the event of a finding of liability is a particularly fact-laden inquiry, which is not well-suited for resolution on motion for summary judgment. *See*, *e.g.*, *Scala v. Delaware Dep't of Corr.*, No. Civ. A 99-030, 2001 WL 641075, at *16 (D. Del. May 22, 2001) (noting that issue of emotional damages is "fact intensive and not conducive to summary judgment"); *Compulit v. Banctec, Inc.*, No. 95-CV-665, 1998 WL 278253, at *5 (W.D. Mich. Jan. 16, 1998) (noting that summary judgment was previously denied on the issue of consequential damages because "the determination of the issue required a fact-intensive inquiry").

14

recommend against the entry of summary judgment in plaintiff's favor. Accordingly, it is hereby

RECOMMENDED, that plaintiff's motion for summary judgment (Dkt. No. 17) be DENIED in all respects.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: August 15, 2007
        Syracuse, NY

                                      David E. Peebles
                                      U.S. Magistrate Judge